UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:97-CR-00024-TBR-3

**UNITED STATES OF AMERICA**             **PLAINTIFF**

v.

**ROBERT L. AGUON (3)**             **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Robert L. Aguon's *pro se* Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A)—First Step Act. [DN 606]. The United States responded. [DN 617]. Defendant filed a Motion for Extension of Time to File Reply, [DN 621], but subsequently filed both a reply and supplemental reply. [DN 623; DN 627]. Defendant also filed Supplemental Motions for his Motion for Compassionate Release. [DN 613; DN 628; DN 644]. Additionally, Defendant filed a Motion for Injunctive Relief. [DN 585]. The United States responded. [DN 591]. Defendant replied. [DN 600]. As such, these matters are ripe for adjudication. For the reasons stated herein, Defendant's Motion for Injunctive Relief, [DN 585], and Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 606], are **DENIED**. Defendant's Motion for Extension of Time to File Reply, [DN 621], is **DENIED as MOOT**.

**I.**     **Background**

In 1998, a jury convicted Aguon of two counts of aiding and abetting a bank robbery, two counts of placing lives in jeopardy, and two counts of carrying a firearm during a crime of violence. [DN 325]. He was sentenced to 438 months, or thirty-six and a half (36 ½) years, in prison. *Id.* Prior to his conviction, Aguon admitted his guilt and accepted a plea for fifteen (15) years, but

later withdrew his plea demanding a jury trial. [DN 173; DN 324]. Aguon appealed his conviction, and the Sixth Circuit affirmed the decision of the district court. [DN 361]. Subsequently, Defendant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 which was denied. [DN 421]. Aguon filed a 60(b)(4) motion with the Court regarding the Courts Order granting his motion to withdraw his guilty plea. [DN 485]. The Court denied the motion. [DN 494]. Aguon also filed a second or successive § 2255 motion with the Sixth Circuit which was ultimately denied. [DN 499; DN 543]. Defendant has now filed the instant motions, seeking relief under 18 U.S.C. § 35382(c)(1)(A)—The First Step Act, [DN 606], and injunctive relief regarding his restitution requirements. [DN 585].

## II.     Compassionate Release

### A. Legal Standard

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3852(c) provides that:

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) In any case—

> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—*
>
>> (i)     extraordinary and compelling reasons warrant such a reduction ..."

18 U.S.C.A. § 3582(c)(1)(A) (emphasis added). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), 18 U.S.C. § 3582(c)(1)(A) requires the Court to engage in a "three-step inquiry" in reviewing compassionate release motions. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 ... [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an

"applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion ... to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

After considering whether extraordinary and compelling reasons warrant a sentence reduction, the district court proceeds to the final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); *Elias*, 984 F.3d at 518 (citing *Jones*, 980 F.3d at 1101, 1108). Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

## B. Discussion

### 1. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, 425 F.Supp.3d. 573, 578 (M.D.N.C. 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release

without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

Defendant sent multiple requests to the warden of his facility asking the BOP to move for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). [DN 606-2]. On September 11, 2020, the warden denied Aguon's request. *Id.* The Government does not dispute that Defendant satisfied the exhaustion requirement. [DN 617 at 5] ("The government concedes that Aguon sought relief from the warden of his institution which was denied."). Accordingly, the Court finds that Aguon has properly exhausted his administrative remedies under the First Step Act.

### 2. Extraordinary and Compelling Reasons

Because Aguon has exhausted his administrative remedies, the Court now considers whether there are "extraordinary and compelling reasons" that justify a reduction of his sentence. "[D]istrict courts have discretion to define 'extraordinary and compelling' on their own initiative." *Elias*, 984 F.3d at 519–20. But "the mere fact that defining *extraordinary and compelling* 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Those words still have their ordinary meaning. *Id.* When Congress enacted the statute in 1984, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (citing Webster's Third New International Dictionary at 463).

In support of his request for compassionate release, Defendant primarily argues that (1) the sentencing disparity created by Congress's reduced sentencing guidelines under 18 U.S.C.

5

§ 924(c), and (2) the lack of penological purpose served by his continual incarceration, together constitute extraordinary and compelling reasons warranting relief. [DN 606]. Upon review, the Court finds that Defendant has failed to establish an extraordinary and compelling reason warranting his release under 18 U.S.C. § 3582(c)(1)(A).

### a.  Sentencing Disparity Created by the First Step Act

In 2018, Congress amended § 924(c) clarifying that repeat offenders are those with prior *final* convictions under the same subsection, not those with a "second or subsequent conviction." Pub. L. No. 115-391, 132 Stat. 5194. In effect, this means that the "stacking" of sentences for offenders without a final conviction would be reduced from twenty-five (25) years to as low as five (5) years for each count. 18 U.S.C. § 924(c). If Aguon was sentenced today, he would have a sentencing range between 21.5 to 23 years rather than the 36.5 years he received in 1998. The Court acknowledges this sentencing difference, and the fact that Defendant has already been incarcerated for over 23 years, but the Sixth Circuit recently held that sentencing disparities created by the First Step Act are not an extraordinary and compelling justification for compassionate release. *See Hunter*, 12 F.4th 555.

Aguon argues that extraordinary and compelling reasons exist because his sentence is longer than appropriate, particularly now that the First Step Act punishes similar offenders with much less time in prison. [DN 606]. Defendant provided a plethora of citations in support of this argument, but the Court is bound by the precedent provided by the Sixth Circuit. In a series of recent cases, the Sixth Circuit has grappled with the idea of using sentencing disparities created by statutory changes as an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A). *See United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021); *United States v. Wills*, 991 F.3d 720 (6th Cir. 2021); *United States*

*v. Owens*, 996 F.3d 755 (6th Cir. 2021); *Hunter*, 12 F.4th 555. In the most recent decision by the Sixth Circuit on the matter, the Court held that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i)." *Hunter*, 12 F.4th at 563 (citing *Jarvis*, 999 F.3d at 445–46; *Wills*, 991 F.3d at 723–24; *Tomes*, 990 F.3d at 505).

Section 403 of the First Step Act rejects retroactivity by limiting applicability to sentences that had not yet been imposed at the time of enactment. Pub. L. No. 115-391, 132 Stat. 5194. As is the "ordinary practice" in federal sentencing "to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Wills*, 991 F.3d at 723–24 (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The Sixth Circuit determined that what is considered an "ordinary practice" by the Supreme Court "cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Hunter*, 12 F.4th at 564 (citing *Wills*, 991 F.3d at 724). "Since sentencing disparities are a natural result of the First Step Act, they are not an extraordinary and compelling reason for a sentence reduction." *Owens*, 996 F.3d at 765 (Thapar, J., dissenting). This means that courts cannot "treat the First Step Act's non-retroactive amendments, whether by themselves or together with other factors, as 'extraordinary and compelling' explanations for a sentencing reduction." *Jarvis*, 999 F.3d at 445. As the Sixth Circuit has made clear, § 3582(c)(1)(A) is not "an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Tomes*, 990 F.3d at 505. Aguon's sentencing in 1998 prevents the application of § 403, and non-retroactive statute changes cannot be considered an "extraordinary and compelling" reason. As such, Defendant's sentencing disparity does not weigh in favor of a reduced sentence.

### b. Penological Reasons for Incarceration

Defendant also argues that "[t]here is no valid penological reason for requiring Aguon to serve out the rest of his 36 ½-year sentence." [DN 606 at 20]. Under this section of his motion, Aguon makes four additional arguments in favor of release: (1) he was penalized for exercising his constitutional right to trial (2) his present age, (3) his age at the time of sentencing, and (4) his rehabilitation.

In his motion for compassionate release, Aguon states that he "received [his] stacked sentence of 36 ½ years because he was penalized for exercising his constitutional right to trial." [DN 606 at 2]. In support of this argument, Defendant discusses the 15-year plea that he was offered, and the fact that his sentencing was rescheduled twice due to his codefendants. *Id.* at 4. Further, Aguon argues that because the Court rejected his claim of coercion, "Aguon had not offered a fair and just reason for withdrawing his guilty plea." *Id.* The Court disagrees. Aguon received his sentence because he made the choice to withdraw his guilty plea and go to trial. The jury convicted him, and the Court sentenced him according to the mandatory sentencing guidelines at that time. He was not penalized for this choice, but rather knowingly accepted the risk of going to trial. Though the Court is sympathetic to the fact that if he had accepted his plea he would no longer be in prison, and that his sentencing was rescheduled due to reasons beyond his control, these are not compelling and extraordinary reasons for release.

The application note to U.S.S.G. § 1B1.13 provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Aguon, forty-six at the

time he filed this motion and in general good health, only satisfies the third requirement. [*See* DN 606-3; DN 613]. His argument that "physiologically Aguon would be between 56 and 61 years of age" due to imprisonment is still younger than the guideline's recommended age. [DN 606]. Further, Aguon has provided no proof of extraordinary or compelling medical ailments justifying release. As such, Defendant's current age, and health, do not provide support for compassionate release.

Defendant states that his age at the time of sentencing should be a factor for consideration in early release because he "was young, immature, easily influenced and did not understand the responsibilities that came with being a young father twice over." [DN 606 at 2]. "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.'" *Hunter*, 12 F.4th at 569. A defendant's age when he committed a crime is a fact that existed at the time of sentencing, meaning that this is an impermissible factual consideration of whether extraordinary and compelling reasons warrant a sentence reduction under the compassionate release statute. The Sixth Circuit further explained, "[t]he problem with such an approach is that it renders the general rule of finality and the extraordinary-and-compelling-reasons requirement 'superfluous, void or insignificant.'" *Id.* (citing *Corley v. United States*, 556 U.S. 303, 314, (2009)). This means that only post-sentencing factual developments that provide extraordinary and compelling reasons specific to the defendant may be considered for compassionate release, after which "a court is permitted to weigh (or revisit) the § 3553(a) factors." *Id.* (citing *Setser v. United States*, 566 U.S. 231, 243 (2012) (explaining that § 3582(c)(1)(A) is triggered by "developments that take place after the [original] sentencing")). Further, the court has specifically stated that in order to receive compassionate release, the defendant must show that their "personal circumstances" have "changed so that the

district court should weigh the § 3553(a) factors differently than it had at the original sentencing." *Id.*; *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021). Therefore, Defendant's age, though admittedly young, was a known fact during the original sentencing, and cannot now be considered an extraordinary and compelling reason to reduce his sentence.

Finally, Defendant argues that his post-conviction rehabilitation record and personal growth since his sentencing support release. [DN 606]. Aguon provided his individualized reentry plan outlining the vast number of courses he has completed while incarcerated. [DN 606-1]. Additionally, Defendant provided an abundance of letters written on his behalf as well as a few personal letters to the Court. [DN 606-4; DN 607; DN 608; DN 611; DN 622; DN 640; DN 644]. These letters all address how much Defendant has grown and changed for the better since his incarceration at an early age. They discuss the impact he has made on his community and his role as a spiritual leader. Aguon has shown a true desire to improve himself in preparation for his release. The Court acknowledges these efforts and commends Aguon's move from a "high" custody inmate to a "low" security custody inmate. That is an impressive feat. However, "rehabilitation is specifically excluded as an independent basis for compassionate release." *United States v. Wieber*, 2020 WL 1492907 *3 (W.D. Ky. March 27, 2020). Again, the Court applauds all the actions Aguon has taken, but because he was unable to show an extraordinary and compelling reason for release, according to the limitations provided by the binding precedent, this motion must be denied.

### 3. 18 U.S.C. § 3553(a) Factors

Considering the totality of Defendant's circumstances, Defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Nonetheless, even though the Court has found Defendant is not entitled to compassionate release, the Court will weigh the sentencing factors in

10

§ 3553(a). *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement ... by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case. The "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offenses for which Aguon is currently incarcerated are undoubtedly serious. Defendant was convicted two counts of aiding and abetting a bank robbery, two counts of placing lives in jeopardy, and two counts of using and carrying a firearm during a crime of violence. [DN 325]. These actions caused the bank employees to fear for their lives and put them in obvious danger. Through those actions, Aguon has shown that he is a danger to the community. Additionally, these convictions were not his first criminal offense. [DN 324]. Though the sentencing guidelines have since been modified, this change does

not apply retroactively, and Defendant has failed to provide an extraordinary or compelling reason to adjust his original sentence. The factors set forth in § 3553(a), to the extent that they are applicable, do not warrant the requested reduction of Aguon's sentence. Therefore, the Court finds that consideration of the applicable § 3553(a) factors calls for denial of the motion for compassionate release.

### III. Restitution – Injunctive Relief

#### A. Legal Standard

The Administrative Remedy Program, found at 28 C.F.R. §§ 542.10–.19, lays out the administrative remedies available to inmates confined in BOP institutions. The requirement to exhaust such remedies "is designed to ensure not only that the agency is given the opportunity to review its conclusions short of litigation, but also that the district court is provided a complete record upon which to review the agency's final action." *Hiles v. Zuercher*, No. 7:09-CV-17-KKC, 2009 WL 499099, at *3 (E.D. Ky. Feb. 27, 2009) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086, 100 S. Ct. 1045, 62 L.Ed.2d 772 (1980)).

#### B. Discussion

Aguon states that he "attempted to file administrative remedies regarding [restitution] but was refused the proper paperwork once the unit was made aware of what petitioner's grievance was about." [DN 585]. Defendant further stated that his unit team informed him that this issue could only be remedied by a court order. *Id.* Without the completion of the proper administrative remedies, the Court must deny Defendant's motion for injunctive relief regarding restitution payments. *United States v. Willis*, No. 3:09-CR-013-TBR, 2018 WL 3077793, at *1 (W.D. Ky. June 21, 2018); *see also United States v. Wright*, No. 96-80876-3, 2010 WL 4639052, at *1 (E.D. Mich. Nov. 8, 2010) (denying a defendant's motion seeking to alter his restitution payment

12

schedule due to failure to exhaust administrative remedies); *Hiles*, No. 7:09-CV-17-KKC, 2009 WL 499099, at *3 (same); *see also Blackburn v. Cauley*, No. 09-CV-9-HRW, 2009 WL 1119421, at *2-3 (E.D. Ky. April 27, 2009) (finding that the petitioner exhausted the available administrative remedies regarding his IFRP payment schedule when the petitioner appealed to the Warden, the Regional Director of the BOP's Mid-Atlantic Regional Office, and the National Inmate Appeals Administrator).

Defendant requests the Court grant injunctive relief by "ordering the Bureau of Prisons (BOP) to immediately cease and desist its practice of collecting $25.00 quarterly from petitioner's inmate account to pay toward his restitution imposed by this Honorable Court on September 1, 1998." [DN 585]. Specifically, Aguon requests removal from his facilities Financial Responsibility Program (F.R.P) without being put on "refusal" status. *Id.* In support of this argument, Defendant claims that "contrary to this Honorable Court's order during sentencing regarding the payment of the special assessment fee, this Honorable Court was silent on when the restitution was due, when collection was to begin and who the restitution or payments thereof were payable to." *Id.* The Court was not silent on the matter of payments. In Defendant's Judgment and Commitment, specifically under the section titled "Schedule of Payments," the Court stated that payment of the total fine, assessment and restitution, was due in full immediately. [DN 325]. The Judgment goes on to state:

> Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States District Court . . . except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program.

As such, if the Court were to address Defendant's payment of restitution, the implication of a payment schedule may be proper because Aguon is technically in default. 18 U.S.C. § 3613A(a)(1). The Court refrains from doing so until the administrative remedies have been

13

exhausted. Though injunctive relief is denied at this time due to the failure to complete the required administrative remedies, the Court is sympathetic to the hardships brought on by Covid-19 for both Defendant's family and his inability to work his institutional job. As such, the Court orders the BOP to provide Defendant with the proper paperwork to complete the administrative remedies requirement, if Aguon still so desires.

## IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 606], is **DENIED**.

(2) Defendant's Motion for Extension of Time to File, [DN 621], is **DENIED as MOOT**.

(3) Defendant's Motion for Injunctive Relief, [DN 585], is **DENIED**, until such time that Defendant exhausts all required administrative remedies.

(4) The BOP is **DIRECTED**, upon Defendant's request, to provide the proper paperwork for Defendant to complete the required administrative remedies.

(5) Additionally, in light of this opinion, no hearing is required. Accordingly, Defendant's request for a hearing on the matter is **DENIED**. [DN 623].

**IT IS SO ORDERED**.

Thomas B. Russell, Senior Judge
United States District Court

November 8, 2021

cc: counsel;
**Robert L. Aguon**, *pro se*
#06019-033
HAZELTON
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525

14