UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                Plaintiff

v.                                                                Criminal Action No. 3:97-cr-0024-RGJ

ROBERT L. AGUON                                                                        Defendant

**MEMORANDUM OPINION & ORDER**

Defendant Robert L. Aguon ("Aguon") moves for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) due to his sentence being unusually long, as well as for personal rehabilitation. [DE 708]. The United States filed a motion to strike and a response to Aguon's motion. [DE 710, DE 716]. Aguon responded to the motion to strike [DE 715] and replied in support of the motion for sentence reduction. [DE 719]. For the reasons below, Aguon's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) [DE 708] is **GRANTED in part** and the United States' motion to strike [DE 710] is **DENIED**.

**I.      BACKGROUND**

In 1998, a jury convicted Aguon of two counts of aiding and abetting a bank robbery, two counts of placing lives in jeopardy, and two counts of carrying a firearm during a crime of violence. [DN 325]. Later that same year, Judge Thomas B. Russell sentenced Aguon to 438 months or 36.5 years. *Id.* Aguon's mandatory sentence from his two stacked 924(c) convictions was 30 years, consecutive to his sentences of 6.5 years for his other convictions for robbery, for a total of 36.5 years. [DE 651, Presentence Investigation Report ("PSR"); DE 325, Judgment]. Before his conviction, Aguon admitted his guilt and accepted a plea for fifteen years, but later withdrew his plea demanding a jury trial. [DN 173; DN 324]. Aguon appealed his conviction, and the Sixth Circuit affirmed. [DN 361]. Aguon then moved to vacate, set aside, or correct his sentence pursuant

1

to 28 U.S.C. § 2255, which was denied. [DN 421]. Aguon filed a Fed. R. Cr. P. 60(b)(4) motion on the Court's Order granting his motion to withdraw his guilty plea. [DN 485]. The Court denied the motion. [DN 494]. Aguon also filed a second or successive 28 U.S.C. § 2255 motion with the Sixth Circuit Court of Appeals, which was ultimately denied. [DN 499; DN 543].

Aguon then filed motions seeking relief under 18 U.S.C. § 3582(c)(1)(A)—The First Step Act, [DN 606], and injunctive relief related to his restitution requirements, [DN 585]. Specifically, as to his request under 18 U.S.C. § 3582(c)(1)(A), Aguon primarily argued that (1) the sentencing disparity created by Congress's reduced sentencing guidelines under 18 U.S.C. § 924(c), and (2) the lack of penological purpose served by his continual incarceration, together constituted extraordinary and compelling reasons warranting relief. [DN 606]. Upon review, this Court[1] denied Aguon's motion on November 8, 2021. [DE 646].

First, this Court found that Aguon had exhausted his administrative remedies. [DE 646 at 1648]. Second, this Court found under Sixth Circuit case law that "non-retroactive statutory reforms in the First Step Act of 2018—as a matter of law—cannot be used to find 'extraordinary and compelling reasons' for a sentence reduction under § 3582(c)(1)(A)(i)." *Id.* at 1650 (citing *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021)). Third, this Court considered Aguon's assertion that "[t]here is no valid penological reason for requiring Aguon to serve out the rest of his 36 ½-year sentence." [DN 606 at 994]. Aguon asserted that release was warranted because: (1) he was wrongly penalized for exercising his constitutional right to trial, (2) his present age, (3) his age at the time of sentencing, and (4) his rehabilitation. While the Court applauded Aguon's rehabilitative efforts, this Court found "he was unable to show an extraordinary and compelling reason for release, according to the limitations provided by the binding precedent." [DE 646 at

---

[1] This matter was reassigned to the undersigned on the retirement of the sentencing judge after the denial of Aguon's first request under 18 U.S.C. § 3582(c)(1)(A). [DE 665]

1653]. Finally, as required, this Court reviewed the sentencing factors under § 3553(a) and found compassionate release inappropriate. *Id.* at 1654-55.

On November 22, 2021, Aguon appealed this Court's Order denying compassionate release under § 3582(c)(1)(A) to the Sixth Circuit. [DE 647]. An appellate case number was issued [DE 648] and briefing was set. On March 21, 2023, the Sixth Circuit dismissed Aguon's appeal for failure to prosecute as Aguon failed to file his brief by the deadline of March 3, 2023. [DE 672]. Then, on June 16, 2023, the Sixth Circuit reinstated Aguon's appeal: "the default which led to dismissal of the appeal has been cured." [DE 677].

In the interim, Aguon moved a second time for relief under 18 U.S.C. § 3582(c)(1)(A) on October 10, 2023 and then for reconsideration of the Court's previous order denying his request for sentence reduction and appointment of counsel. [DE 687, DE 692, DE 693]. The Court denied those motions on January 23, 2024. [DE 694]. Aguon then filed a motion to clarify his motion for reconsideration, which was denied on February 13, 2024. [DE 699, DE 700].

Just before this court's denial of Aguon's motion to clarify, on February 8, 2024, the Sixth Circuit Court of Appeals issued an order and judgment affirming this Court's 2021 denial [DE 646] of Aguon's motion for injunctive relief [DE 585] and motion for compassionate release [DE 606]. [DE 697, Order of USCA; DE 698, Judgment of USCA].

On May 23, 2024, Aguon filed his third and present motion for reduction of sentence and compassionate release. [DE 708]. As grounds for his motion, Aguon cites his sentencing being unusually long, as well as personal rehabilitation, youth at the time of the offense, and family and community support. [*Id.*]. Aguon is 50 years old and currently housed at Pekin FCI with a release date of September 17, 2030.  *See* https://www.bop.gov/inmateloc/ (last accessed February 3, 2025). Aguon has served over 27 years of his sentence.

3

The United States objects to Aguon's motion and moves to strike it for exceeding the page limits set by local rule. [DE 710, DE 716]. The United States argues that the non-retroactive changes to the law under the First Step Act reducing lengths of sentences cannot be considered an extraordinary and compelling reason for sentence reduction under Sixth Circuit precedent. [DE 716].

## II.   ANALYSIS

### A. Exhaustion of Administrative Remedies

When considering a motion for compassionate release under § 3582(c)(1)(A), the Court determines as an initial matter whether the movant exhausted his administrative remedies. An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see generally United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024).[2] The exhaustion requirement is mandatory, and the Court is bound to enforce it when it is properly invoked by the government. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Pena-Lora*, No. 15-20695, 2020 WL 3886384, at *1 (E.D. Mich. July 9, 2020).

---

[2] Before the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons ("BOP"). *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The United States argues that nothing in the record demonstrates that Aguon exhausted his administrative remedies. [DE 716 at 2244]. Aguon attaches a filled-out Bureau of Prisons form "Request for Administrative Remedy" dated April 17, 2024. [DE 708-1 at 2211]. He also attached a "Rejection Notice – Administrative Remedy" which states that his request was rejected because "you did not attempt informal resolution prior to submission of administrative remedy, or you did not provide the necessary evidence of your attempt at informal resolution." [DE 708-1 at 2213]. Aguon argues that informal resolution is required for an inmate grievance, but not a motion for sentence reduction. [DE 719 at 2296].

The Court is unaware of any requirement that informal resolution be attempted before a request to the Warden for sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring a lapse of 30 days from the receipt of such a request (motion of the defendant) by the warden of the defendant's facility). Thus, the Court agrees that Aguon made the request to the Warden and over 30 days have lapsed. As a result, Aguon meets his burden to demonstrate exhaustion of administrative remedies.

### B. Sixth Circuit "Three-Step Inquiry."

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission recently amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The updated policy statements "provide[ ] a non-exhaustive list of various circumstances that either alone or in combination qualify as extraordinary and compelling reasons for a sentence reduction." *United States v. Whitworth*, No. 1:23-CR-561-4, 2023 WL 8190131, at *2 (N.D. Ohio Nov. 27, 2023). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The § 3553(a) factors to be considered include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d at 1114); *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing alone, "does not rise to the level of an extraordinary and compelling reason for granting compassionate release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir. Dec. 12, 2023); *Jackson*, 2023 WL 9023349, at *2 (citing *Ruffin*, 978 F.3d at 1004).

The defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 611 F.Supp.3d 395, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

### 1. *Extraordinary And Compelling Justification for Compassionate Release and Consistency with United States Sentencing Policy Statement.*

a. Unusually Long Sentence

Aguon first argues that he is serving an "unusually long sentence" because the sentences for his offenses under 18 U.S.C. § 924(c) for possessing a firearm were "stacked." The First Step Act eliminated the practice of stacking § 924(c) charges in a first offense; now, the imposition of

stacked 20-year mandatory minimum sentences is only permitted "[i]n the case of a violation of [924(c)] that occurs after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c); *see also* Pub. L. No. 115-391 § 403(a). The First Step Act, however, does not generally provide retroactive relief for those who were sentenced prior to its effective date. *See United States v. Richardson*, 948 F.3d 733, 748-49 (6th Cir. 2020).

In *United States v. McCall*, the Sixth Circuit considered whether nonretroactive changes might be considered "extraordinary and compelling circumstances." 56 F.4th at 1048-1055. Sitting *en banc*, the court held that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis." *McCall*, 56 F.4th at 1065; *see generally United States v. Ruvalcaba*, 26 F. 4th 14, 27 (1st Cir. 2022) ("[I]f a district court were to reduce a sentence solely because . . . [a statute's] non-retroactive amendments would have lowered a defendant's sentence, it might be seen as substituting its own judgment on retroactivity for Congress's judgment."). In other words, Congress did not intend for those who had already been convicted of multiple offenses pursuant to § 924(c) to be resentenced under this change in law. However, *McCall* notes that the Sentencing Commission might amend its policy in the future, which it has now done as explained below. *McCall,* 56 F.4th at 1054, 1060, n. 3, n.5.[3]

Since *McCall*, the Sentencing Commission regained its quorum and issued, among other provisions, § 1B1.13(b)(6). Under U.S.S.G. § 1B1.13(b)(6), the United States Sentencing Commission indicates that unusually long sentences can be considered extraordinary and compelling circumstances under the following conditions:

---

[3] *McCall* noted that "Congress has delegated to the Commission the task of 'describ[ing] what should be considered extraordinary and compelling reasons . . . ' 28 U.S.C. § 994(t). Whether the Commission could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language is a question that we need not resolve in the absence of an applicable statement . . ." *McCall*, 56 F.4th at 1054, n.3.

8

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

Thus, an extraordinary and compelling reason for a sentence reduction may exist where (1) a defendant has served 10 years of (2) an unusually long sentence and (3) a change in the law has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed[.]" § 1B1.13(b)(6). If those items are met, the Court must give "full consideration of the defendant's individualized circumstances," as to whether they warrant a reduced sentence. § 1B1.13(b)(6).

In discussing the "unusually long sentence" the Sentencing Commission notes: "[D]ata show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer." U.S. Sent'g Comm'n, Amendments to the Sent'g Guidelines 60 (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (last visited February 5, 2025). And while there is no set number or bright line rule for what constitutes an unusually long sentence, Courts have determined a sentence is "unusually long" where there is a "gross disparity" between the original sentence and what it would be today. In addition, the Court can consider what percentage of the overall sentence a certain charge comprises versus the proportion that charge would be if sentenced for the same crimes today. *See United States v. Ware*, 720 F. Supp. 3d 1351, 1363 (N.D. Ga. 2024) (finding sentence unusually long where penalty for 924(c) charges originally accounted for 80% of the

9

original sentence, but if sentenced today would only account for 25% of the sentence). Court have also considered data from the Sentencing Commission in determining a sentence is unusually long. *United States v. Allen*, 717 F. Supp. 3d 1308, 1317 (N.D. Ga. 2024) (discussing Judiciary Sentencing Information ("JSIN") data).

A gross sentencing disparity exists when such disparity is "glaringly noticeable." *Allen*, 2024 WL 631609, at *6 (noting that "[w]hat rises to the level of a 'gross disparity' is not strictly defined."). Courts in this district have found unusually long sentences extraordinary and compelling under the policy in § 1B1.13(b)(6). *See United States v. Cornell*, No. 1:03-CR-00431-2, 2024 WL 3532924, at *5 (N.D. Ohio July 25, 2024), on reconsideration in part, No. 1:03-CR-00431-2, 2024 WL 4142686 (N.D. Ohio Sept. 11, 2024) (Holding there is a gross disparity between life and 250 months, thus an unusually long sentence supported finding of extraordinary and compelling reasons to reduce sentence); *United States v. Bricker*, No. 1:05 CR 113, 2024 WL 934858, at *2 (N.D. Ohio Mar. 5, 2024) (finding a sixteen-year disparity between sentence in 2006 and the upper end of the sentence defendant would receive today an extraordinary and compelling reason justifying early release); *United States v. Brooks*, No. 3:07-CR-51-TAV-JEM-5, 2022 WL 17814192 (E.D. Tenn. Dec. 19, 2022) (reducing the defendant's sentence to time served even though the case was serious because the defendant's excessively long sentence from 924(c) stacking, age, and rehabilitation lessened the likelihood of reoffending).

And if the Court determines a compelling and extraordinary reason exists to reduce Aguon's sentence, its discretion is not constrained in fashioning the appropriate sentence, even by mandatory minimums. *See, e.g., Osman v. United States,* No. 10-CR-57, 2023 WL 3765246, at *4 (E.D. Va. June 1, 2023) ("Simply put, compassionate release applies to all offenses and all defendants. Accordingly, the Court has the authority to reduce a sentence below the mandatory

minimum."); *United States v. Rollins*, 540 F. Supp. 3d 804, 814 (N.D. Ill. 2021) (noting that the government did not dispute that § 3582(c)(1)(A) "empowers the court to reduce a sentence below the applicable statutory minimum").

Here, assuming the above policy statement is controlling, there is no dispute that Aguon has served over 27 years of his sentence, satisfying the 10-year requirement, and that there has been a change in the law under the First Step Act. The question is whether the change in law produced "a gross disparity between the sentence being served and the sentence" Aguon would receive today such that his sentence is "unusually long." Aguon argues these changes in the First Step Act as to stacking create a "gross disparity" resulting in an extraordinary and compelling justification for compassionate release. [DE 708, DE 719].

When sentenced in 1998, Aguon's three § 924(c) convictions[4] were all adjudicated at once, and they mandated 360 months or 30 years of Aguon's 438 month or 36.5-year sentence. The United States concedes that if Aguon were sentenced today, he would be subject to lower sentence and argues that he would subject to a mandatory 23.5-year sentence, as opposed to the 36.5-year sentence he received in 1998 (for the 924(c) charges). [DE 716 at 2256]. The Court is unsure of how the United States made its calculation. Today Aguon would be subject to a sentence for the bank robberies, which the Court originally sentenced in 1998 at 78 months or 6.5 years, at the lower end of the guideline range, and Aguon would be subject to a mandatory 10-year sentence for the 924(c) convictions. Thus, today Aguon would be subject to a 16.5-year sentence, not a 36.5-year sentence. A 20-year difference in sentence amounts to a gross disparity under § 1B1.13(b)(6).

According to the JSIN data, during the last five fiscal years (FY2019-2023), there were 42

---

[4] There were three 924(c) counts: Count 25, Count 26, and Count 29. Count 25 was merged into Count 26.

11

defendants whose primary guideline was §2B3.1 and who were convicted of at least one count of 18 U.S.C. § 924(c), with a Final Offense Level of 26 and a Criminal History Category of III, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 42 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 186 month(s) or 15.5 years and the median length of imprisonment imposed was 168 month(s) or 14 years.

In short, there is a 20-year difference in the sentence Aguon would receive today based solely on the guidelines and mandatory minimums. That difference could potentially be greater in light of the above JSIN data. Based on the likely 20-year discrepancy and considering the JSIN data, the Court finds a gross disparity resulting in an unusually long sentence under § 1B1.13(b)(6).

Having found Aguon's "unusually long sentence" is "grossly disparate," the Court addresses Aguon's "individualized circumstances" below to determine whether they combined with his extraordinarily lengthy sentence warrant a reduced sentence.

a. Age at the Time of the Offense

Aguon was in his early twenties during the timeframe in which he committed these bank robberies. He submits his youthful age, 22 years at the time of the offenses, is an extraor at the time of dinary and compelling justification for release. [DE 708 at 2167, 2192]. As an initial matter, Aguon's age was known to the sentencing court at the time of sentencing. [DE 651, PSR]. As such, Aguon's young age at the time of committed these offenses is not a new development. The Sixth Circuit has held that facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("Facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction."). Because

12

Aguon's age at the time of the offenses was known and considered by the Court, it does not alone justify early release. *Hunter*, 12 F.4th at 563 & n.3. Nonetheless, Aguon's young age at the time of the offense may be considered in combination with other factors. *United States v. Bolden*, No. 3:98-CR-107-CRS, 2021 WL 2228060, at *6 (W.D. Ky. June 1, 2021) (reducing a sentence due to defendant's "age at the time of his offense, his rehabilitation since being incarcerated, the incredible length of the mandatory-minimum sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment"); *United States v. Baker,* No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (reducing a sentence based on defendant's "remarkable record of rehabilitation, his relative youth at the time of his offense, the length of his sentence, and the disparity between his sentence and those sentenced for similar crimes after the First Step Act").

      b. <u>Family and Community Support</u>

Aguon argues that if released, he will have significant family and community support and attaches evidence of same in support. [DE 708 at 2203]. While Aguon's community and family support are not an enumerated circumstance under U.S.S.G. § 1B1.13 that standing alone qualify as an extraordinary and compelling reason for release, his post-release plan and circumstances are an important consideration in combination with all circumstances. *See, e.g., United States v. Mack*, No. 2:98-CR-162, 2021 WL 1099595, at *4 (S.D. Ohio Mar. 23, 2021) (reducing a sentence based on a finding that defendant's rehabilitation, family and community support, and health conditions constitute extraordinary and compelling circumstances); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019) (reducing a sentence based in part on defendant's community support and stability offered by a job offer upon release).

      c. Rehabilitation

Aguon submits his rehabilitation and good disciplinary history are exceptional and compelling circumstances warranting release. [DE 708 at 22-2-03]. While rehabilitation by itself cannot serve as independent reason for compassionate release, it can be considered in concert with other circumstances. *Lawrence v. United States*, 570 F. Supp. 3d 524, 529 (W.D. Ky. 2021) ("rehabilitation is specifically excluded as an independent basis for compassionate release."); *United States v. Wieber*, Case No. 3:14-CR-74-TBR, 2020 WL 1492907 at *3 (W.D. Ky. Mar. 27, 2020) (collecting cases holding that rehabilitation is not a sufficient basis for compassionate release). The Court applauds Aguon's rehabilitative actions, and they are another individualized circumstance that, considered in combination, support reducing Aguon's sentence. Aguon has earned a GED with few behavioral issues and has participated in several health and wellness programs. [DE 708-2, Exhibit B].

In short, Aguon's unusually long sentence is grossly disparate when compared to the sentence he would receive today. This combined with his young age at the time of the offense, family and community support, and rehabilitative efforts, demonstrate extraordinary and compelling circumstances supporting reducing his sentence.

### 2. *Sentencing Objectives In 18 U.S.C. § 3553(a).*

This Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. Under § 3553(a), there are seven factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kind of sentences available; (4) the kinds of sentence and the sentencing range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C.S. § 3553. A court need not "specifically articulat[e]" every single Section 3553(a) factor in its analysis. *Jones*, 2020 WL 6817488, at *11. Instead, the record "as a whole" must confirm that the pertinent factors were considered by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id*. at *11–12.

Turning to the nature and circumstances of Aguon's offenses, his crimes involved robberies and possession of firearms, and the events included threatening victims' lives. [DN 651, PSR, at 1667-70]. Aguon was not involved in the first seven robberies as he was detained during that time in Shelby County, Kentucky. [DE 651, PSR at 1666-67]. Co-defendant Maurice Navvaro Brooks bribed a deputy jailer to release Aguon and Aguon was involved in the eighth and ninth bank robberies. [*Id*.] During the eighth robbery, Aguon entered the bank with a handgun, escorted a teller to the bank vault, and filled a black plastic trash bag with money from the teller drawers. [*Id*. at 1667]. During the ninth robbery, Aguon entered the bank and went to the vault. [*Id*.]. Aguon was apprehended weeks later and was in possession of a firearm. [*Id*.]

The court also considers the history and characteristics of the defendant. Before this case Aguon and others got into a shoot-out, which resulted in charges for felony Wanton Endangerment, Carrying a Concealed Weapon, and Trafficking in Cocaine. [DE 651 at 1668]. During Aguon's detention on those charges, Aguon unlawfully escaped from the jail, resulting in another charge—Escape in the Second Degree. [DE 651 at 1674-75]. Aguon's criminal history also includes two other felony convictions for Forced Entry Burglary in the Second Degree and Trafficking in Controlled Substance (Cocaine). [DE 651 at 1673-74]. Finally, it includes two juvenile adjudications for Theft by Unlawful Taking and Criminal Mischief in the Second Degree. [*Id*.]

15

But, as discussed above, Aguon has made rehabilitation efforts and these efforts have continued despite his past requests for release being denied.  His good disciplinary history over the course of his 27 years in prison are further evidence of rehabilitation. While Aguon's criminal history is serious, danger to the community is tempered by his rehabilitation.

While the court reviewed these factors again in denying Aguon's previous request for sentence reduction and concluded the § 3553(a) factors did not support release at that time, Aguon has continued to make personal progress despite his requests for release being denied.

The Court has considered the § 3553(a) factors and finds that they counsel for some amount of sentence reduction.  The need to avoid sentence disparities coupled with other factors including Aguon's rehabilitation, age, and length of time served support a sentence reduction.

### C.  Page Limit

Finally, the United States objects to Augon's motion exceeding the page limit set by local rule.  Augon's motion is written by hand and the Court finds good cause to permit additional pages. The United States' motion to strike is **DENIED**.

### III.   CONCLUSION

For the reasons above and using the Sixth Circuit's standard of full discretion as explained in *Jones*, Aguon has shown extraordinary or compelling reasons to alter his sentence.  2020 WL 6817488, at *7-9. If sentenced today, Aguon would be subject to a mandatory minimum of 10 years on the 924(c) charge alone. The guideline for his robbery convictions, which are to be served consecutive to his mandatory minimum for the gun violation, was 78 to 97 months. [DE 651 at 1677, ¶ 104].  Aguon was sentenced to 78 months, or 6.5 years, for his robbery convictions. [DE 325]. That sentence was at the lower end of the guideline. There is no argument that that guideline range would be different today and the sentencing within the guideline range reflected the serious

16

nature of the offenses. JSIN data also reveals average sentences for similar defendants in the 15-year range. Thus, considering all § 3553(a) factors, the Court concludes a sentence of 16.5 years is reasonable under the circumstances and complies with the objective of § 3553(a). Aguon has served approximately 27 years of his sentence. Thus, because Aguon has already served approximately 11 years more than the sentence the Court has determined would be reasonable today, the Court will reduce Aguon's sentence from 36.5 years to time-served, not as of today, but as of 30 days from today.

The Court being otherwise sufficiently advised, **IT IS ORDERED** that Aguon's Motion to Reduce Sentence [DE 708] is **GRANTED in part** as set forth above. Aguon's sentence is reduced from 36.5 years to time-served as of 30 days from today. The decision is **STAYED** for 30 days to allow the Bureau of Prisons and Probation Department time to implement an orderly transition plan and will afford the United States an opportunity, if it wishes, to appeal and seek a stay. **IT IS FURTHER ORDERED** that the United States' Motion to Strike [DE 710] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

February 6, 2025

Copies to:   Defendant, *pro se*

17